UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA          )
                                  )
                                  )
vs.                               )          1:06-cr-46
                                  )          COLLIER/CARTER
                                  )
WAYNE MERRELL                     )

## REPORT AND RECOMMENDATION

### I.  Introduction

Defendant Wayne Merrell has filed two motions to suppress: A Motion to Suppress Evidence found in the search of defendant's residence (Doc. 35) and a Motion to Suppress Statements (Doc. 34) made by the defendant to officers on the day his residence was searched. Defendant contends the search warrant affidavit used to obtain the search warrant for his house fails to set forth probable cause and that police officers did not give him his Miranda rights prior to questioning him at his residence while the search was in progress.  Both motions are before the undersigned having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B)&(C).  For the reasons stated herein, it is RECOMMENDED that defendant's motions to suppress be DENIED.

### II. Relevant Facts

An evidentiary hearing on the defendant's two motions to suppress was held before the undersigned Magistrate Judge on Wednesday, October 4, 2006. One witness, Special Agent Tony Isom of the Federal Drug Enforcement Administration (DEA), testified at the hearing. Agent Isom has been employed by the DEA for twenty years. On April 21, 2006, he along with

ten other officers executed a search warrant at the defendant's residence in Dunlap, Tennessee. The affidavit used to obtain the search warrant for the defendant's residence was prepared and signed by Ricky Smith, Director of the Twelfth Judicial Drug Task Force, and dated April 20, 2006.  The affidavit provides in relevant part:

Agents with the Twelfth Judicial Drug Task Force and the Tennessee Bureau of Investigation (TBI) have received within the past year an unspecified number of anonymous complaints of strong chemical odors emanating from the defendant's residence and of a large amount of traffic coming to the residence and staying only a few minutes.  (Aff. at 2).

On January 5, 2003, agents from the Twelfth Judicial Drug Task Force found 22 gallons of muriatic acid, a methamphetamine precursor, approximately 100 yards from the defendant's residence.  (Aff. at 3).

On June 19, 2005, TBI agents received an anonymous tip from a female that a bad odor was "around" the defendant's residence and cars were coming in and out of the defendant's driveway with the occupants going inside for short periods of time and then leaving.  (Aff. at 3).

In January 2006, an undercover DEA agent located in Indiana began communicating with one Gene Wells in California by e-mail and telephone.  On January 23, 2006, Gene Wells shipped approximately two kilograms of red phosphorous, a methamphetamine precursor, and an unspecified amount of methamphetamine as a sample to the undercover DEA agent in Indiana. (Aff. at 4).  On February 13, 2006, the undercover DEA agent sent Wells $3000.  On February 22, 2006, Wells shipped 106 grams of crystal methamphetamine to the undercover DEA agent via U.S. Postal Express Mail.  The return address on the package was Gene Wells, China Homebuilding Imports, Inc., 1400 Washington Blvd, Monebello, Ca. 90640.  (Aff. at 4).  On

March 10, 2006, the undercover DEA agent sent Wells $2,300 and on March 13, 2006, Wells sent the undercover DEA agent 109 grams of crystal methamphetamine with the same return address on the package. (Aff. at 4-5). Throughout his communication with the undercover DEA agent, Wells talked about supplying red phosphorous to methamphetamine cooks throughout the country. Wells also asked the undercover DEA agent to find some ephedrine for him to purchase. Wells arranged to meet the undercover DEA agent in Seymour, Indiana to buy ephedrine for $3,500. When Wells arrived in Seymour on April 1, 2006, he was arrested at the meeting place. (Aff. at 5).

Upon his arrest, Wells agreed to cooperate. He told the agent he was supplying red phosphorus to 12 people in 12 states via the internet. DEA agents used Wells' business as an undercover front for the sale of methamphetamine precursors and were able to identify some of those 12 people. (Aff. at 5). DEA agents also recovered several e-mails sent from Wells to the defendant. An e-mail between Wells and the defendant on April 29, 2005 indicated defendant sent Wells $800.00 and another e-mail between Wells and defendant on May 17, 2005 indicated defendant sent $700.00 as payment for methamphetamine precursors. (Aff. at 6). In another e-mail sent on March 28, 2006, Wells informed the defendant that he (Wells) had 100% ephedrine for $10.00 a gram. On April 5, 2006, after Wells had been arrested on April 1, 2006 and agreed to cooperate with law enforcement and after the DEA was controlling Wells' e-mail account as a front, defendant sent an e-mail to Wells's e-mail account informing Wells that he (defendant) had sent $990.00 to Wells via Western Union. Agents believed this e-mail indicated defendant had purchased 99 grams of pure ephedrine to manufacture methamphetamine. (Aff. at 6).

The affidavit also contained the usual language indicating that because of his training and experience, the affiant knows manufacturing methamphetamine produces a strong chemical smell and that frequent traffic and persons who stay only minutes at a residence are commonly associated with illegal drug trafficking. (Aff. at 6).

The search of defendant's residence commenced at about 8:30 am. When police arrived, the defendant, the defendant's mother, and co-defendant Robert Newman were present. Officers knocked and the defendant came to the door. Another officer besides Agent Isom handed the defendant a copy of the warrant. The defendant was placed in the kitchen with his mother and then later moved to the living room. He was not handcuffed at that time and other officers were watching him while the search commenced. Co-defendant Robert Newman was placed in a separate area from defendant Merrell. At approximately 10:00 am, Agent Isom went into the kitchen where the defendant and his mother were being watched by other officers. At this point, Isom gave the defendant his Miranda rights then asked the defendant for consent to search the computers in the house. The defendant declined to give consent but a couple of minutes later changed his mind and signed a consent form. The defendant explained to Isom that the police were eventually going to search his computer anyway so he might as well consent. No inculpatory statements were made at this time by the defendant. Sometime between 10:30 and 11:30 am, officers brought the defendant outside the house and placed him in handcuffs. He was under arrest at that time based on the evidence of methamphetamine manufacturing that was discovered inside the defendant's residence. Agent Isom went to stand beside the defendant some fifty to sixty feet from the residence beside a large oak next to the driveway. Merrell was awaiting transport to the county jail. Isom approached Merrell and told him he was aware of the

internet communications Merrell had had with Wells and that the officers had found a substantial

amount of equipment used to manufacture methamphetamine inside defendant's residence.

Agent Isom testified that at this point the defendant started to talk again and Isom stopped him

and gave him his Miranda warnings again. Merrell then gave, without further prompting,

statements concerning his illegal methamphetamine manufacturing activities. The defendant was

taken to the county jail sometime shortly thereafter.  Police continued to search the residence

until approximately 5:00 pm that afternoon and seized numerous items which are commonly

used to manufacture methamphetamine.

### III. Discussion

*A. The Search of the Defendant's Residence*

The defendant argues the affidavit at issue fails to set forth probable cause because much

of the information is stale, comes from unreliable sources, and fails to establish a sufficient

nexus between illegal activity and the place searched.  The defendant also argues the affiant

intentionally omitted crucial information which, if it had been presented, would have further

negated any basis for establishing a nexus between the defendant's purchase of

methamphetamine precursors and his residence.

The Fourth Amendment provides "no warrant shall issue but upon probable cause,

supported by oath or affirmation...." *U.S. Const. amend IV.*   To establish probable cause to

justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists

that evidence of a crime will be located on the premises of the proposed search." *United States

v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*,

396 F.3d 751, 760 (6th Cir. 2005).  The Court must consider the totality of the circumstances as

set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of

the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560,

565 n. 8 (1971) (Court limited to review of affidavit itself); *Frazier*, 423 F.3d at 531. Where an

affidavit relies upon hearsay information from a confidential informant to supply probable cause,

"a court must consider the veracity, reliability, and the basis of knowledge of that information as

part of the totality of the circumstances for evaluating the impact of the information." *Frazier*,

423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)).

Independent police corroboration of a confidential informant's story is not necessarily required

to support probable cause, but where the affidavit lacks indicia of the informant's reliability,

"courts insist that the affidavit contain substantial independent police corroboration." *Frazier*,

423 F.3d at 532; *see also*, *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005); *United*

*States v. Woosley,* 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Allen,* 211 F.3d 970, 976

(6th Cir.) (en banc), *cert. denied*, 531 U.S. 907 (2000).

The affidavit at issue unquestionably provides substantial, fresh, and police corroborated

information that the defendant was involved in illegal manufacturing of methamphetamine.

Police had independent information from an undercover DEA agent that Gene Wells was using

the internet to pedal substances used to manufacture methamphetamine. After Wells' arrest on

April 1, 2006, Wells agreed to cooperate with the DEA to identify the persons he was selling

these substances to across the United States. By viewing Wells' e-mail, the DEA was able to

identify the defendant as one of those persons who purchased methamphetamine precursors from

Wells. In fact, on April 5, 2006, 16 days before the search warrant affidavit was executed,

defendant e-mailed Wells' account indicating he was purchasing 99 grams of pure ephedrine, an amount of a substance indicative of methamphetamine manufacturing.

The concern with this affidavit, however, does not lie with the issue of sufficient evidence to believe the defendant was involved in a crime; it centers directly on the question of whether the affidavit presented enough evidence to support probable cause to search the defendant's residence. *See United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (the "'critical element in a reasonable search is not that the owner of the property is suspected of crime, but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.'") (quoting *Zurcher v. Standford Daily*, 436 U.S. 547, 556 (1978). Defendant asserts "[t]here is nothing [in the affidavit] to suggest to this Magistrate that drugs, contraband or any chemicals were sent to Wayne Merrell at his residence." (Defendant's brief at 4, Doc. 35). Defendant further asserts that the affiant left out critical information from the e-mails between Wells and defendant which clearly established that the methamphetamine precursors were mailed to a post office box, not to defendant's residence. The defendant has asked for a hearing under *Franks v. Delaware*, 438 U.S. 154, 171 (1978) to determine if the affiant intentionally or with reckless disregard omitted information which would have negated probable cause to search defendant's residence.

Under *Franks v. Delaware*, 438 U.S. 154, 171 (1978) and its progeny, a defendant can seek the suppression of evidence by showing that the affiant deliberately or with reckless disregard for the truth made material omissions to the affidavit. *United States v. Charles*, 213 F.3d 10, 23-24 (1st Cir. 2000), *cert. denied*, 531 U.S. 915 (2000); *United States v. Green*, 175 F.3d 822, 828 (10th Cir.) *cert. denied*, 528 U.S. 852 (1999); *United States v. McNeal*, 184 F.3d

770, 775 (8th Cir. 1999); *United States v. Chalmers,* 1990 WL 66817*3 (6th Cir. 1990). A material omission is one which, if it had been included in the affidavit, would negate the finding of probable cause. *Green*, 175 F.3d at 828; *Chalmers*, 1990 WL 66817 *3. In order for the defendant to show Task Force Director Ricky Smith deliberately or with reckless disregard for the truth omitted material information in his affidavit, an evidentiary hearing is required during which defendant is allowed to present evidence. *See United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir. 1984); *McNeal,* 184 F.3d at 775; *Charles*, 213 F.3d at 24. Before a defendant is entitled to a hearing, however, the defendant must meet a two-pronged test: First, the defendant must make a substantial *preliminary* showing that the affiant made the omission deliberately or in reckless disregard for the truth. *Id*. Second, the court must find that if the omission had been included in the affidavit, probable cause would no longer exist. *Id.* If the court finds that the defendant has met the two-pronged test for a hearing, then in order for the defendant to prevail on his motion to suppress, the defendant must prove by a preponderance of the evidence that the material omission was done deliberately or with reckless disregard for the truth and, with the material omission included in the affidavit, the affidavit no longer establishes probable cause to issue the search warrant. *Id*.; *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Defendant Merrell has made his substantial preliminary showing by filing his affidavit. Mr. Merrell's affidavit states in relevant part that the e-mails viewed by the DEA agents prior to searching his residence reveal that the contraband Merrell was buying from Wells was to be sent to a post office box, not to the defendant's residence on Rankin Avenue in Dunlap, Tennessee. Copies of two e-mails dated April 10, 2005 and April 5, 2006 sent from defendant to Wells and attached to the defendant's affidavit specifically state that the defendant's shipping address is a

post office box. These emails appear to be the e-mails referenced by Director Ricky Smith in his affidavit. Whether contraband is being shipped to the place to be searched is material to the probable cause issue in this case. Thus, the defendant has met the first prong of the *Franks v. Delaware* test to obtain a hearing.

As previously stated, where a material omission is concerned, the Court must consider whether the affidavit supports probable cause with the previously omitted information included. In this case, the previously omitted information is that contraband bought from Wells was sent to Merrell's post office box, not his residence. Defendant asserts that with this information included in the affidavit, the affidavit lacks probable cause, and he cites several cases in support of his position. In *United States v. Lockett*, 674 F.2d 843 (11th Cir. 1982), police provided an affidavit for a search warrant for dynamite at the defendant's home in which the affiant recounted the defendant had sued his former employer several times, the defendant had made implied threats involving explosives against his former employer, the defendant had been seen by a named informant purchasing dynamite, and police had found at one of defendant's former employer's buildings a bomb made of the same type of dynamite purchased earlier by the defendant. The court found the affidavit failed to establish a nexus between the dynamite and the defendant's residence and reversed the conviction. *Id.* at 847.

In *United States v. Flanagan,* 423 F.2d 745 (5th 1970), the affidavit for the search warrant at issue provided reliable information that the defendant, a felon, had burglarized a house and that some but not all of the items taken were found on the defendant in another city about ten days later. The affiant provided nothing else to connect the defendant's residence, the place searched, with the burglary except the affiant's subjective belief that the other items could be

found in the defendant's home many miles away. The court held the warrant invalid because it failed to establish a connection between the stolen goods and the defendant's residence. *Id.* at 747.

In *United States v. Evans*, 97 F. Supp. 95 (E.D. Tenn. 1951), the district court held evidence of the defendant's residence should be suppressed where the search warrant affidavit stated a liquor still had been found 250 yards from the residence along with a single path of footprints in the snow and mud leading from the residence to the still. The Court reasoned that there was nothing in the affidavit which suggested any evidence of distilling equipment or supplies would be found in the house as all the needed supplies for distillation including the mash were already at the still. *Id.* at 97.

In *United States v. Carpenter*, 360 F.3d 591, 594-95 (6th Cir. 2004)(en banc), the Sixth Circuit held an affidavit for a warrant to search the defendant's residence failed to set forth probable cause where the affidavit simply stated police observed from a helicopter numerous marijuana plants growing in a field and a road connecting the plants to the defendant's residence.

After considering these cases carefully, the undersigned concludes they do not command suppression of evidence found in defendant Merrell's residence because the affidavit at issue here provides more information to link evidence of a crime to the defendant's residence. By adding the omitted information, the affidavit in this case still provides strong, current and independent information that Merrell was purchasing substances to manufacture methamphetamine while also providing less current, less weighty information that he was using his residence to manufacture and/or sell the methamphetamine. Of course, one cannot manufacture methamphetamine at a post office box, thus it would have been obvious to the

agents and the issuing magistrate that the contraband shipped to Merrell's post office box was being taken somewhere else to make the methamphetamine – but where?  The affidavit also provides that 1) on January 2, 2004, two years and two months before the search warrant was issued, agents found 22 gallons of muratic acid, a methamphetamine precursor, about 100 yards from the defendant's residence, and 2) within the past year, including on June 19, 2005, police received anonymous complaints that chemical odors were coming from the defendant's residence which also had a high volume of short time visitors.  This second set of information *by itself* provides a tenuous connection to evidence of illegal activity and the defendant's residence. Furthermore, the first set of information, *i.e.*, that defendant is buying contraband over the internet to make methamphetamine, provides even less a connection between contraband and the defendants's residence.  But when the Court considers those two sets of facts together, the connection between the residence and evidence of illegal activity becomes much stronger.  If Merrell is buying substances to manufacture methamphetamine in April 2006, then it is much more likely that the reports of chemical odors indicative of methamphetamine manufacturing and high turnover traffic (indicative of dealing) were accurate.  It is also much more likely that the 22 gallons of muriatic acid found about 100 yards from the defendant's residence are also connected to the residence.  That the information in the affidavit covers nearly a two and a half year period is indicative of an ongoing operation.  Probable cause does not require a showing that it is more likely than not that evidence of a crime will be found in the place to be searched. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("'Finely tuned standards such as proof ... by a preponderance of the evidence, useful in formal trials, have no place in the [probable cause] decision.'") (bracket original) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).  Rather, it requires only a

fair probability that evidence of a crime will be found in the place to be searched. Based on the totality of the circumstances, I conclude the government has met its burden.

### B. The Defendant's Statements to Police

Defendant attacks the admissibility of his statements made to Agent Isom on several grounds: the defendant was not advised of his *Miranda* rights prior to questioning, defendant did not voluntarily waive his Miranda rights, and the statements are illegal because they were a product of an illegal search and/or arrest.

Pursuant to the Fifth Amendment's privilege against self-incrimination, police must give a suspect in police custody the standard Miranda warnings[1] before questioning or the defendant's statements are not admissible at trial in the prosecution's case in chief. *Dickerson v. United States*, 530 U.S. 428 (2000); *Miranda v. Arizona*, 384 U.S. 436 (1966). Agent Isom testified that he gave the defendant his Miranda rights twice, in each instance immediately before the defendant made incriminating statements. There was no evidence to the contrary, and I fully credit Agent Isom's testimony. Accordingly, defendant's motion fails on this ground.

Though the defendant was given Miranda warnings before making statements, the inquiry as to the voluntariness of the statements does not end there. *Dickerson*, 530 U.S. at 444. The government still must prove that the statements were given voluntarily. Nevertheless, "cases in which a defendant can make a colorable argument that a self-incriminating statement

---

[1]These warnings are: "a suspect 'has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning is he so desires.'" *Dickerson*, 530 U.S. at 435 (citing *Miranda*, 384 U.S. at 479).

was compelled despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare." *Dickerson*, 530 U.S. at 444 (internal citation omitted).

The voluntariness of a confession is to be judged on the totality of the circumstances. *See, Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The government must show by a preponderance of the evidence through clear and positive testimony that a defendant voluntarily waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986), *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). "The Fifth Amendment prohibits the prosecution's use of a defendant's compelled testimony." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985)), *cert. denied*, 515 U.S. 1145 (1995). "The Due Process Clause of the Fourteenth Amendment also prohibits the admission of coerced confessions procured by means 'so offensive to a civilized system of justice that they must be condemned.'" *Ledbetter*, 35 F.3d at 1067 (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter*, 35 F.3d at 1067 (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)); *Haynes*, 301 F.3d at 684. "Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Ledbetter,* 35 F.3d at 1067 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)); *Haynes*, 301 F.3d at 684.

The evidence indicates there was no coercion or trickery on the part of any agents to

encourage the defendant to talk. No threats were made if he would not talk. Prior to his arrest, while the search was being conducted, he was detained without handcuffs. There was no physical punishment such as deprivation of food or sleep, and he was not repeatedly subjected to questions. Rather, he seemed eager to talk. The e-mails between defendant and Wells indicate the defendant is of at least average intelligence and capable of understanding his Miranda rights. Based on the undersigned's observation of the defendant, I would conclude he is over forty years of age. There is simply no basis to conclude that the defendant's will was overborne such that he felt compelled, in any way, to make incriminating statements. The defendants' motion fails on this ground as well.

Defendant's last argument is that the statements must be suppressed as fruits of an illegal search and/or arrest. I have already concluded the search was not illegal. As for the defendant's initial detention and subsequent arrest, I find no error there either. "[O]fficers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Thus, the agents' detention of the defendant in the house while conducting the search was proper. Defendant was not under arrest until he was placed in handcuffs, taken outside the house and prepared for transport to the county jail. At this point, law enforcement had ample evidence constituting probable cause to believe the defendant was involved in the manufacturing of methamphetamine from the e-mails sent between defendant and Wells and from the numerous items used for manufacturing methamphetamine found in his house.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress evidence found in the search of his residence (Doc. 35) and the defendant's motion to suppress statements (Doc. 34) be DENIED.[2]

        s/William B. Mitchell Carter
        UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).