UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

|                          |   |                              |
|--------------------------|---|------------------------------|
| UNITED STATES OF AMERICA | ) |                              |
|                          | ) |                              |
|                          | ) | No. 1:06-CR-46               |
| v.                       | ) |                              |
|                          | ) | Chief Judge Curtis L. Collier |
|                          | ) |                              |
| WAYNE MERRELL            | ) |                              |
|                          | ) |                              |

## **M E M O R A N D U M**

Defendant Wayne Merrell ("Defendant") filed two motions to suppress (Court File Nos. 34, 35), which were referred to United States Magistrate Judge William B. Mitchell Carter to conduct an evidentiary hearing if necessary and make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). The magistrate judge filed a report and recommendation ("R&R") recommending Defendant's motions be denied (Court File No. 45).

Defendant filed an objection to the R&R within the ten-day period, arguing the magistrate judge erred in relying on "less current, less weighty information," and as a result, the Court should sustain Defendant's objection, overrule the magistrate judge's decisions, and suppress the items discovered in the April 21, 2006 search of Defendant's residence (Court File No. 48). Alternatively, Defendant requests the court to remand this matter to the magistrate judge to conduct an immediate *Franks* hearing. For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R, with one modification, and will **DENY** Defendant's motions to suppress and Defendant's request for a remand to the magistrate judge for a *Franks* hearing.

I.  **STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

**II. FACTS**

The recitation of facts contained in the magistrate judge's R&R represents the versions of the events in question put forth by both Defendant and the Government. Defendant has not objected to the magistrate judge's statement of the facts; therefore, the Court will **ACCEPT** and **ADOPT** by reference the magistrate judge's statement of facts in his R&R (Court File No. 47, pp. 1-6).

**III. ANALYSIS**

**A. Defendant's Statements to Police**

Based on testimony given at the motion-to-suppress hearing, the magistrate judge concluded Defendant was given *Miranda* warnings twice, in each instance immediately before Defendant made incriminating statements. Further, the magistrate judge found the evidence showed there was no coercion or trickery on the part of any agents to encourage Defendant to talk, and as such, there was no basis to conclude Defendant's statements were not voluntary. Finally, the magistrate judge concluded the statements should not be suppressed as fruits of an illegal search and/or arrest since he had already concluded the search was not illegal, and no error was committed when Defendant was initially detained and subsequently arrested. Neither party has objected to this portion of the magistrate judge's opinion. Accordingly, the Court will **ACCEPT** and **ADOPT** this portion of the R&R.

### B. The Search of Defendant's Residence

The magistrate judge rejected Defendant's arguments regarding the search of his residence and concluded: (1) the affidavit at issue unquestionably provides substantial, fresh, and police corroborated information that Defendant was involved in illegal manufacturing of methamphetamine; and (2) although Defendant made a substantial preliminary showing that the affiant made an omission deliberately or in reckless disregard for the truth, he was not entitled to a *Franks* hearing since the affidavit supports probable cause even with the omitted information included. Defendant objects to these findings and asserts the magistrate judge erred in denying his request for a *Franks* hearing and erred in denying his motion to suppress the search of his residence on or about April 21, 2006. Specifically, Defendant states "the Affidavit that contained uncorroborated anonymous complaints, stale information, constitutionally vague and/or 'bare bone' allegations' [sic] failed to provide a sufficient nexus with the Defendant's residence to justify that evidence of a crime would be found at the Defendant's residence." (Court File No. 48 at 4).

In *Franks v. Delaware*, the Supreme Court recognized a defendant's right to challenge the sufficiency of previously issued and executed search warrants. 438 U.S. 154 (1978). In doing so, however, the Court acknowledged there is a presumption of validity with respect to the affidavit supporting the search warrant, *id*. at 171, and as such, a defendant is "entitled to an evidentiary hearing on the veracity of the statements in the affidavit if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997) (emphasis in original). The *Franks* doctrine extends to omissions of

3

information from affidavits as well. *Hale v. Kart*, 396 F.3d 721, 726 n.4 (6th Cir. 2005) (citing *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998); *United States v. Bonds*, 12 F.3d 540, 568-69 (6th Cir. 1993).

Although material omissions are subject to review under *Franks*, an affidavit with potentially material omissions is less likely to merit a *Franks* hearing than an affidavit including allegedly false statements. *Mays*, 134 F.3d at 815; *Atkin*, 107 F.3d at 1217. Consequently, when dealing with omissions of information, a *Franks* hearing will be granted only in rare instances. *See Mays*, 134 F.3d at 816 ("except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts") (emphasis in original). "If a defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Hale*, 396 F.3d at 726 (quoting *Atkin*, 107 F.3d at 1217). "The mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing." *Id*. at 727. "Absent this first preliminary showing, the district court may not engage in the second inquiry related to probable cause." *Id*.

    **1.**    **Preliminary Showing**

In this case, the magistrate judge found Defendant met the first preliminary showing and reasoned as follows:

> Defendant Merrell has made his substantial preliminary showing by filing his affidavit. Mr. Merrell's affidavit states in relevant part that the e-mails viewed by the DEA agents prior to searching his residence reveal that the contraband Merrell was buying from Wells was to be sent to a post office box, not to the defendant's

4

> residence on Rankin Avenue in Dunlap, Tennessee. Copies of two e-mails dated April 10, 2005 and April 5, 2006 sent from defendant to Wells and attached to the defendant's affidavit specifically state that the defendant's shipping address is a post office box. These emails appear to be the same e-mails referenced by Director Ricky Smith in his affidavit. Whether contraband is being shipped to the place to be searched is material to the probable cause issues in this case.

(Court File No. 47, pp. 8-9). While the Court agrees with the magistrate judge's ultimate conclusion a *Franks* hearing was not warranted and the motion to suppress should be denied, the Court views the legal analysis differently.

While the information submitted by Defendant and relied on by the magistrate judge shows an omission occurred, the mere existence of an omission is not enough to make a strong preliminary showing. *Hale*, 396 F.3d at 727; *see also Bonds*, 12 F.3d at 569 ("the fact of the omissions, without more, does not show recklessness on the part of the affiant"). Defendant made no allegations, in his motion to suppress nor in his objections to the R&R, the omissions were a result of the affiant's intention to mislead the judge. As a result, Defendant did not make a strong preliminary showing the affiant engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and the Court should not engage in the second inquiry related to probable cause. *Hale*, 396 F.3d at 727. However, since Defendant's objections center around the magistrate judge's analysis of the second prong, the Court will discuss whether the omissions were critical to the finding of probable cause.

### 2. Probable Cause

Assuming *arguendo* Defendant made a preliminary showing the government affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in omitting information from the affidavit, the Court will now consider the affidavit including the

omitted portions and determine whether probable cause still exists. *Hale*, 396 F.3d at 726. In this case, the omitted information is the contraband Defendant purchased from Gene Wells ("Wells") was sent to Defendant's post office box, not his residence. Defendant asserts once this information is included in the affidavit, the information contained in the affidavit is insufficient to support probable cause to search his home. Specifically, Defendant attacks the magistrate judge's reliance on the anonymous complaints, the 22 gallons of muriatic acid found on January 2, 2004, and emails to Wells.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991); *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985). To determine if an affidavit establishes probable cause,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Therefore, "search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

In this case, the affidavit provided (1) on January 2, 2004, agents found 22 gallons of muratic acid, a methamphetamine precursor, about 100 yards from the defendant's

residence; (2) within the past year, including on June 19, 2005, police received anonymous complaints chemical odors were coming from the defendant's residence, which also had a high volume of short time visitors; (3) the affiant, Agent Ricky Smith ("Smith"), stated based on his training and experience, those who use or traffic in controlled substances will attempt to physically separate themselves from the controlled substances, and they do so by placing the controlled substance in a "neutral" location; (4) the Drug Enforcement Administration ("DEA") uncovered a methamphetamine conspiracy being operated across 12 states and learned Defendant had been purchasing methamphetamine precursor substances from Wells since April 2005. Even if the Court includes in the affidavit the fact the contraband purchased from Wells was sent to Defendant's post office box, the Court finds probable cause still existed to search Defendant's home.

Defendant attacks the affidavit on a line-by-line basis, beginning with the anonymous complaints, stating there was no police corroboration of the complaints. While it is true a search warrant lacks probable cause when it is based solely on anonymous tips, *United States v. Campbell*, 256 F.3d 381, 388 (6th Cir. 2001), that is not the case here. The affidavit in this case contained information Defendant purchased precursor materials for manufacturing methamphetamine from Wells, a man who admitted he sold such materials to methamphetamine manufacturers in approximately twelve states via the internet. When methamphetamine is manufactured, it produces a strong chemical order. Thus, once the agents received information Defendant had purchased materials needed for manufacturing methamphetamine, it made the anonymous tips about the chemical odor coming from Defendant's home more credible. Since corroboration need not take any particular form,

7

these facts were sufficient for the issuing judge to independently determine the anonymous tips were reliable. *Compare McCraven*, 401 F.3d at 697 ("[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form."). Consequently, the affidavit, although based in part on anonymous tips, was sufficient to support a finding of probable cause.

Next, Defendant argues the 22 gallons of muriatic acid should not have been considered because it was stale. While it is true the police discovered these materials on January 2, 2004, almost three years before the search at issue, "evidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Abboud*, 438 F.3d 554, 573 (6th Cir. 2006) (quoting *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)). Here, there was evidence to show Defendant was participating in ongoing criminal activity. Wells admitted to an undercover DEA agent he provided both red phosphorous and crystal iodine to methamphetamine "cooks" throughout the United States. (Court File No. 35, Exh. Search Warrant at 9). The affidavit stated Defendant had been purchasing such materials from Wells since April 2005, and his most recent attempt to purchase such materials was on April 5, 2006. Since "ongoing criminal activity *at a given time* may be sufficient to defeat a claim of staleness," Defendant's argument is without merit. *See Abboud*, 438 F.3d 554, 573 (emphasis in original).

Finally, Defendant argues the emails exchanged between Defendant and Wells do not establish a nexus with Defendant's residence and the materials purchased. Although Wells mailed the materials to Defendant's post office box rather than his home, the issuing magistrate judge had a substantial basis for concluding that probable cause existed. First,

8

since Defendant was suspected of manufacturing methamphetamine, it is reasonable to suspect evidence of such activities would be found at Defendant's home. *See Frazier*, 423 F.3d at 537 (6th Cir. 2005) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers reside."); *United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002). *See also United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live.").

Further, the affidavit need not show it was more likely than not evidence of a crime would be found at the place to be searched, *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); instead, it must show a fair probability that evidence of a crime will be found in the place to be searched. Since Defendant cannot manufacture methamphetamine in the post office, under a totality of the circumstances, there was a fair probability he did so at home. Therefore, the Court finds the magistrate judge's determination with respect to probable cause was supported by relevant law and will **ACCEPT** and **ADOPT** the magistrate judge's finding of probable cause.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court has determined the magistrate judge's legal analysis with respect to Defendant's statements to the police is correct under relevant law. Therefore, the Court will **ACCEPT** and **ADOPT** the magistrate judge's determination Defendant's statements to the police should not be suppressed as fruits of an illegal search and/or arrest. Although the Court

9

does not agree with the magistrate judge's reasoning with respect to whether Defendant made a preliminary showing to receive a *Franks* hearing, the magistrate judge's ultimate conclusion probable cause was present and thus a *Franks* hearing was not warranted and the search should not be suppressed is supported by relevant law. Thus, with modification to incorporate by reference the Court's discussion of the preliminary showing for the *Franks* hearing, the Court will **ACCEPT** and **ADOPT** the magistrate judge's determination the defendant was not entitled to a *Franks* hearing and the evidence obtained as a result of the search of Defendant's home should not be suppressed. The Court will **DENY** Defendant's motion to suppress and Defendant's request for a remand to the magistrate judge for a *Franks* hearing.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**